PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-00290 JLT-SKO |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING MEMORANDUM |
| v. | DATE: June 20, 2023 |
| RUDY REYES, | TIME: 10:00 a.m. |
|  | COURT: Hon. Jennifer L. Thurston |
| Defendant. |  |

## I. INTRODUCTION

The defendant pleaded guilty, on December 2, 2022, to a one-count information that charged him with Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470. The court has scheduled a sentencing hearing for June 20, 2023.

The United States Probation Office submitted a revised presentence investigation report (PSR), dated May 30, 2023, that has outlined the offense conduct, parts of the defendant's personal history, and the ranges for sentencing under the U.S. Sentencing Commission's Sentencing Guidelines. The report recommends a total term of imprisonment of 21 months and a 36-month term of supervised release. It also recommends that no fine be imposed but that the defendant be ordered to a mandatory $100 special assessment.

The probation officer carefully considered all of the mitigating and aggravating factors and, based on the offense conduct and the defendant's personal history and characteristics, recommends that

GOVERNMENT SENTENCING MEMORANDUM         1

the defendant be sentenced to a term of imprisonment of 21 months. The government concurs in this sentencing recommendation. The government also believes that the risks that he presents to the public, particularly minors, justify the maximum 36-month term of supervised release. The government does not believe that the defendant is indigent for purposes of imposing a fine, since he owns stocks valued at $40,000 and two motorcycles worth at least $6,000 (total). Moreover, he is still young, in good health, has an employment history, and will be employable upon release from custody. Thus, the court should impose a sentence that includes the following components: a total term of imprisonment of 21 months; a special assessment of $100; a fine of $5,000 (unless a victim submits a restitution request, in which case the $5,000 would be applied toward restitution); and a 36-month term of supervised release that contains the standard and special conditions outlined in the PSR.

## II. THE U.S.S.G. RANGE CALCULATED BY THE PROBATION OFFICE IS CORRECT AND SUGGESTS AN APPROPRIATE TERM OF IMPRISONMENT.

The sentenced recommended by the government will be sufficient, but not greater than necessary, to accomplish the sentencing considerations at 18 U.S.C. § 3553(a)(1) through (6). This is true in light of the defendant's history of having contacted numerous females on the internet for sexual purposes, including the eight year-old victim in Pennsylvania that led to the investigation of this case and the identification of a different fourteen year-old victim in Bakersfield.

## III. CONGRESSIONAL CONCERN ABOUT THOSE WHO SEXUALLY EXPLOIT CHILDREN REMAINS STRONG AND JUSTIFIES THE SENTENCE RECOMMENDED BY THE PROBATION OFFICE AND THE GOVERNMENT.

Numerous statutory and Sentencing Guidelines amendments have strengthened the penalties for federal offenses related to the sexual exploitation of minors, and they support a sentence of imprisonment of 21 months followed by a 36-month term of supervised release. The defendant is in the general population of sexual offenders who have been deemed worthy of significant federal punishments. Although he has pointed to his own victimization, this does not distinguish him from many other similarly-situated offenders. If anything, his own alleged victimization should have made him more sensitive to the impact that sexual exploitation of minors has on victims such as the young girls to whom he exposed himself and contacted for sexual purposes.

The continued focus on people who use the internet to sexually exploit children, such as the defendant, demonstrates that Congress has made this area a legislative priority, and it has attempted to ensure effective prosecution and punishment of offenders. Legislative activity in this area is consistent with a Congressional attempt to hold those who attempt to sexually exploit children fully accountable for their actions. This need is even more critical as technology and offenders become more sophisticated and the number of potential victims becomes larger while their ages become lower. Notably, the victim in this case was just eight years old when the defendant communicated with her. The defendant purported to be a 13 year-old female and threatened to kill the victim's mother if the victim did not take off her clothes for the defendant while he watched. If the full content of the defendant's communications with this victim were available, it is certainly possible that he would be facing a more significant charge with a 15-year mandatory minimum prison sentence.

Imposing a prison term at the high end of the Sentencing Guidelines range, while taking account of the defendant's personal history and characteristics, would be consistent with Congressional and judicial recognition of the harms inflicted upon victims of child exploitation offenses. By increasing the punishment based on the facts of an offender's particular conduct, courts can tailor sentences for defendants based upon the nature and circumstances of the offenses they have committed.

### IV. RELEVANT SENTENCING FACTORS SUPPORT THE SENTENCE RECOMMENDED BY PROBATION AND THE GOVERNMENT

The considerations at 18 U.S.C. § 3553(a)(1) through (6) justify a sentence that includes a term of 21 months imprisonment followed by a 36-month term of supervised release.

#### A. 3553(a)(1) – The nature and circumstances of the offense and the history and characteristics of the defendant.

The defendant has demonstrated his sexual interest in minors by contacting minor females through the internet and social media apps, exposing himself to them, and attempting to engage them in sexual communications online. His offense conduct is obviously disturbing and justifies the government's recommended sentence. A prison term of 21 months with sex offender treatment that continues into a 36-month term of supervision will not eliminate the defendant's sexual interest in children, but it should provide him with sufficient insights and techniques to help reduce the risk that he will continue to present to the public, particularly minor females. A 36-month term of supervised

release is warranted so that he participates in sex offender treatment, is obligated to register as a sex offender, and also participates in any other treatment that his supervising probation officer might recommend as beneficial.  His access to minors, computers, and the internet also should be restricted and subject to the supervision of a probation officer.

The defendant's letter appears to offer a contrite summary of some of his personal history and offense conduct, but there are some troubling aspects to note.  First, he mentions that the FBI "raided" his residence in 2017.  Although he communicated with an eight-year-old female victim in May of 2017, the FBI did not execute a search warrant at his residence until early 2019.  In the intervening time, by his own admission, he was spending a significant amount of time on social media contacting people for the purpose of having them watch him masturbate.  He contacted a different minor female in the Bakersfield area in approximately February 2018 which led to the Bakersfield Police Department confronting him.  He denied engaging in any inappropriate contact with any minor both times when law enforcement questioned him.  By his own admission, the defendant continued to abuse substances for several years after the FBI conducted a search warrant at his residence.  Accepting as true his statement that he has been sober since July 2022, this would mean that even after the FBI searched his residence and the government informed him that he would be charged in this case (in December 2021), he continued to abuse substances.  The court cannot verify whether he has actually used any controlled substances, though, since he has not been supervised by a Pretrial Services officer or submitted to any drug or alcohol testing.

The defendant has submitted a psychological evaluation from Dr. Stephen Phillips which the court should view with caution given that he will not be available for cross-examination.  He seems to have expressed the dubious opinion that events in the defendant's childhood caused him to commit the crime for which he faces sentencing: this "case is the result of his acting out of his previously unseen and unconscious sexual desires formed at the time of his early sexual abuse, contrary to his prior course of conduct and active adult sexuality."  Report at 12.  He goes on to opine that these "proceedings are the result of the emergence of a formerly unconscious sexual fixation when Mr. Reyes was at a highly regressed, emotionally compromised, and chemically disinhibited place in his life."  While it is likely true that the defendant's criminal conduct overlapped with his substance abuse and mental health issues,

GOVERNMENT SENTENCING MEMORANDUM           4

there is no sound medical basis upon which anyone can draw a causal connection between events that happened as a child and conscious decisions that an adult chose to make later in life. Presumably Dr. Phillips would provide citations to any authority upon which his opinion is based if that were true.

He also seems to express the opinion that if the defendant were able to address all of the factors that make him a risk to reoffend, he would be less likely to do so. "[W]ith continued abstinence from all substances, intensive psychotherapy for his unintended parental neglect, multiple losses of loved ones, early sexual abuse, and premature sexualization, and adjunctive treatment with psychotropic medication for his obsessive-compulsive processes, depression, and anxiety, he appears unlikely to repeat his offense-related behavior." Report at 2. This doesn't really add much in the way of assuring the court that the defendant will not remain a risk to reoffend, since the opinion is that the defendant's diminished risk depends upon his ability to reduce the factors that contribute to a higher risk of reoffending.

**B.  3553(a)(2) – The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with necessary educational training, medical care, or other correctional treatment.**

The majority of these sentencing factors weigh in favor of a sentence that includes a term of 21 months imprisonment followed by a 36-month term of supervised release. The defendant would benefit from participating in a program of sex offender counseling and treatment, and this would best be done within the confines of a Bureau of Prisons (BOP) facility. Each BOP institution has counseling resources available, and each region also has at least one designated sex offender management and treatment program. Even if he received the 21-month sentence recommended by the probation office and the government, it would not be sufficiently long to permit the defendant to participate in a residential sex offender treatment program. Nor would his sentence be long enough to participate in a residential drug and alcohol abuse treatment program. But imposing the prison term recommended by the government and probation would provide the defendant with just punishment, afford adequate deterrence to him and others, protect the public from his demonstrated sexual interest in children, and provide the defendant with necessary educational training, medical care, or other correctional treatment.

///

**C. 3553(a)(3) and (4) – The kind of sentences available and the sentencing ranges established.**

These factors also weigh in favor of the government's recommended sentence, because the ranges for sentencing include a prison term of up to ten years, and the U.S.S.G. range as calculated by the probation office is 15-21 months imprisonment. PSR, Part D, paras. 68-69. The U.S.S.G. call for a fine in the range of $7500 to $75,000. In light of the defendant's ownership of stocks and motorcycles, the court should impose a fine of $5,000, unless the victim submits a claim for restitution.

**D. 3553(a)(5) – Any pertinent policy statements by the Sentencing Commission.**

Although many defendants and some courts have criticized the punishments for federal child sexual exploitation offenses, Congress has not relented in legislating in this area. Relatively recently, Congress enacted the Justice for Victims of Trafficking Act of 2015, Pub. L 144-22, May 29, 2015. Notably, too, although the Sentencing Commission made some adjustments to provisions of U.S.S.G. § 2G2.2 effective November 1, 2016, most of the provisions were not changed. And although they are only advisory, the Guidelines, at 5K2.0 Application Note 4, indicate that downward departures in "child crimes and sexual offenses" are strongly discouraged. This only underscores that Congress and the Sentencing Commission generally believe that the range for sentencing in a case such as before the court is not unduly harsh. So these factors weigh in favor of a sentence within the Guidelines ranges. There are a significant number of courts that have followed the same provisions and imposed sentences within relevant ranges.

The court should reject the defendant's request to not apply the two-level upward adjustment in offense level for use of an interactive computer service. The Sentencing Commission chose a base offense level that does not assume that every violation of 18 U.S.C. § 1470 necessarily involves use of a computer or interactive computer service. This permits the offense level to be adjusted to the facts of each case, and only those cases in which the additional adjustment is appropriate result in an upward adjustment in offense level. Here the defendant used an iPhone, which courts have considered to be a computer given its advanced functionality, and its Facetime application as well as Musical.ly (now TikTok) to communicate with an eight-year-old victim. The defendant engaged in similar conduct with many other people, so use of the phone and its applications was integral to commission of his offense.

Just because iPhones and applications for them have become ubiquitous for law-abiding people does not mean that criminals who use this technology to victimize minors should have a court ignore how the offense is committed. The court will send a better message of deterrence that if technology is used to sexually exploit and victimize minors, there will be a consequence. Not acknowledging or taking into account how the defendant committed the offense for which he is being sentenced would send the wrong message.

### E. The need to avoid unwarranted sentencing disparities.

Many defendants sentenced in the Fresno division of the Eastern District of California have received sentences within the relevant Sentencing Guidelines range for some of the conduct similar to that engaged in by this defendant. The defendant's conduct in this case justifies the court in staying within the Guidelines range just as it (similar to other judges) has done in other cases in which defendants have pointed to factors in their upbringing or family situation in requests for less punishment. *See, e.g. United States v. Maldonado*, No. 1:08-CR-0273 OWW, 2009 WL 4510152 (E.D. Cal. Nov. 30, 2009); *United States v. Madera-Ortiz*, 637 F.3d 26 (1st Cir. 2011) (sentence at high-end of range of 15-21 months, including two-level increase for use of a computer).

### V. CONCLUSION

The court should impose a term of imprisonment of 21 months followed by a 36-month term of supervised release that includes the standard and special conditions proposed in the probation report. The court should also impose a special assessment of $100 and a fine of $5000.

Dated: June 12, 2003

PHILLIP A. TALBERT
United States Attorney

By:  /s/ DAVID L. GAPPA
DAVID L. GAPPA
Assistant United States Attorney